[Civ. No. 3849.  Second Appellate District, Division Two.—June 16, 1922.]

## GEORGE S. BENSON et al., Appellants, v. COUNTY OF KERN, Respondent.

[1] CONTRACTS—CONSTRUCTION OF COUNTY HIGHWAY—ELIMINATION OF UNCOMPLETED PORTION — MUTUAL AGREEMENT — EVIDENCE — FINDINGS.—In this action to recover damages for the alleged breach of a contract for the construction of a county highway, arising out of the elimination from the contract of a portion of the highway which was at the time uncompleted, the evidence was ample to support the finding of the trial court that the elimination of the uncompleted portion of the highway from the contract was made pursuant to a mutual agreement of the parties to that end.

APPEAL from a judgment of the Superior Court of Ventura County. Merle J. Rogers, Judge. Affirmed.

The facts are stated in the opinion of the court.

E. T. Sherer and Emmet H. Wilson for Appellants.

U. S. Webb, Attorney-General, J. R. Dorsey, District Attorney, R. B. Lambert, Deputy District Attorney, and T. M. McNamara for Respondent.

WORKS, J.—This is an action to recover damages for the breach of a contract entered into between plaintiffs and defendant whereby plaintiffs engaged to construct a certain highway for defendant. Judgment went for the latter and plaintiffs appeal.

The contract between the parties provided for the building of nearly eleven miles of road. Appellants had entered upon the performance of the work, had fully completed more than four miles of the road and had done the preliminary work of clearing the land throughout the remainder of the distance, when the uncompleted portion of the highway was "eliminated" from the contract. Notice of this elimination was given orally to appellant, according to some of the testimony, by the engineer and certain members of the highway commission of respondent and appellants were by the engineer, according to his own testimony, ordered to "shut down" the work under the

contract. Later, on December 6, 1917, the clerk of the board of supervisors of respondent wrote appellants that on that day the board had by resolution "eliminated that portion of the work provided for by contract and specifications" which had not been completed, the portion thus "eliminated" being particularly described in the letter. The notice to shut down work on the uncompleted part of the highway and the elimination of that part of it from the contract constitute the principal breach of which appellants complain. There is also an allegation in the complaint to the effect that appellants were damaged in a certain amount by reason of respondent's delay for a specified number of days in furnishing a quantity of broken stone and screenings to be used in the work and agreed by respondent to be furnished by it therefor. This allegation apparently refers to materials used in constructing the completed portion of the road, but as the trial court found the averment to be untrue, and as the finding is not assailed by appellant, we shall consider the action as if it were one commenced to recover damages alone for what we have termed the principal breach of the contract.

[1] It was alleged in the answer and found by the trial court that the elimination of the uncompleted portion of the highway from the contract was made pursuant to a mutual agreement of the parties to that end. Appellant contends that the court's finding on this subject is not supported by the evidence, and, as we view the case, the determination of the appeal depends upon the solution of this question alone. One of the members of the board of supervisors of respondent testified, in part: "I had a conversation with the plaintiffs in this case concerning the contract now before the court. I do not remember the exact date, but it was some time during the fall of 1917. The conversation was with Mr. Paul Benson. . . . I cannot give the exact words. . . . As I understand, Mr. Benson's position was that if they were compelled by the county to complete the entire contract, there was a doubt whether there would be funds enough to pay them. . . . I cannot give the exact language, but Mr. Benson was attempting to ascertain from me what the disposition of the board of supervisors of the county would be toward settling the contract in full, and they got me to admit in my judgment there wouldn't be

money to pay them. . . . The Court: Q. Do you mean . . .
Mr. Benson asked you what would be the attitude of the
board of supervisors? A. Yes, sir. Q. He said he thought
there was not funds? A. And I agreed with him . . . he
stated that it would interfere with his business for the
county to compel him to carry out the contract when it was
a general rumor that there wouldn't be funds enough to
settle for the work if he did it, and then he went to ask
me some questions as to what the board thought about
that, and then afterward he took up with me the question
of [if (?)] it, the contract, a portion of it was eliminated,
then what would the board of supervisors do toward paying
him for the necessary work to complete what he called the
long haul of the contract. . . . I had several conversations
with the same gentleman concerning this contract. The
second conversation was in the office and he introduced his
father. We talked along the same lines somewhat at that
time and I recall another time that he was in the board of
supervisors' room, not where we were in formal session,
but we were all up there, I mean the board of supervisors.
. . . Mr. Claude Benson brought his father in and intro-
duced him. . . . I had another conversation about the con-
tract in question in the supervisors' room. I think all of
the members of the board of supervisors were there. . . .
The conversation that was had in the presence of these
supervisors was in reference to the amount which would be
right to be paid Mr. Benson for the excess cost of the work
which was completed. The substance of the conversation
was that the board of supervisors would be willing to pay
this additional cost if there was money enough in the fund
to pay it and the district attorney would advise us it was a
legal charge against the county. By the extra work I mean
that Mr. Benson explained to me that owing to the other
work that he had been expecting to do, the entire contract,
and also owing to the fact that the pieces that he was to
complete was further away from his hauling point that it
would cost more than the average if he had the entire con-
tract, and that it wasn't fair to ask him to do the hard
end of the contract and have the easy or lowest average
eliminated. I agreed with him on that point, and I assured
him that I was satisfied that the board of supervisors
wouldn't insist upon his completing the entire contract as

long as there was doubt as to being enough money in the fund to pay for it if completed. . . . At the particular time in my office Mr. Benson stated that there was doubt as to whether there was money enough to pay for the entire contract if it was completed. . . . I have related all that I can recall at this time of the conversation I had with Claude Benson, one of the plaintiffs in this action, concerning the contracts in question. I do not recall any other reason being stated in any of these conversations with Claude Benson why he and his partners desired to be relieved from the contract except what I have stated. He desired to be relieved of it owing to the condition of the funds. I have no recollection of any proceedings in the matter except the resolution passed eliminating that portion of the work.'' This testimony was all given on direct examination and it was followed by a cross-examination which served to strengthen the witness' story as to the conversations between him and Claude Benson. We reproduce but two of the statements of the witness on cross-examination: ''I know we both [he and Benson] agreed in regard to the fairness of cancelling the contract instead of demanding that they go on, and also as to the fairness of his being paid the right figure for the work he had completed and was going to complete in order to use up the material on the ground as I understood it. . . . I do not think he [Benson] put it in the manner, that the Highway Commission had eliminated it, but putting it rather as a suggestion that the contract would be partially canceled and after I agreed with him either at that time or at subsequent meetings, why, we went on and discussed the amount of what would be fair to him in the matter of payment for the part that he had completed.'' This testimony was substantially corroborated by a witness who was a member of the highway commission of respondent during the year 1917, as he testified to similar conversations with one or more of appellants. Among other things this witness said, on cross-examination: ''I cannot fix the various dates upon which I had conversations with Benson & Sons concerning this contract because there were so many of them. Whenever Benson & Sons came into the office that matter would be talked of. The substance of the conversation with Benson & Sons regarding the elimination of a portion of the

work to be done under that contract was that under the existing conditions of the supposed shortage of funds and the trouble we had had in supplying the material, their desire was that we come to an agreement to conclude the contract or the part that was already under construction, to finish that. As I understood at that time the other portions of the road was to be left, that no further work was to be done."

On December 5, 1917, and after the time of the various conversations referred to by these two witnesses, appellants addressed to the highway commission of respondent a letter, the body of which was as follows: "As you have eliminated that portion of our contract on the Wasco-McFarland road from station 0.30 to station 351.00 (except such portion as has already been completed), we ask for release on same in order that we may have our bond canceled. Hoping you may see fit to grant the same, we are, Respectfully, . . . " There is apparently one feature of this communication which accords with the claim of appellants that the "elimination" was made unilaterally by respondent and that appellants were "ordered" to cease work under the contract by the engineer of the highway commission. That feature is exhibited in the opening words of the letter: "As you have eliminated that portion of our contract," etc. These words of the missive, however, may have been used because of the fact that in a sense respondent was primarily chargeable with the elimination through its failure to keep intact the fund referred to in the testimony of the two witnesses; but whatever the reason for their use, other deductions may be drawn from the letter—deductions entirely consistent with the claim of respondent that the contract, as to the uncompleted work, was abandoned through the mutual consent of the parties. Why, for instance, was the letter written before any formal action in the matter of "elimination" had been taken either by the highway commission or by the board of supervisors? Prior to December 5, 1917, nothing had developed on the subject except by way of oral communication between the parties. If appellants were opposed to the "elimination" why did they not say so in their letter? The communication is devoid of the slightest assertion that they were not agreeable to a cessation of the work under the contract. If

they were not agreeable to such a termination of the obligations of the contract on both sides, why did they ask so submissively "for a release on same in order that we may have our bond for that portion canceled"? If the arrangement had not been satisfactory to them, their natural course would have been to keep the bond in force, as well as to preserve in every respect an attitude indicating that they not only stood ready and willing to complete the work, but that they insisted on the right to do so.

On the receipt of the letter from appellants, on December 6, 1917, the highway commission transmitted it to the board of supervisors with the recommendation "that the request be granted by your board." On the same day the latter body adopted the resolution referred to in the letter of its secretary, already mentioned, which in terms, it will be remembered, eliminated the uncompleted work from the contract. The resolution recited, by way of preamble, the receipt of appellants' letter by the highway commission, and also the fact that the commission had recommended that appellants' request be granted.

We cannot but conclude that the record discloses ample evidence to support the finding to which objection is made.

Judgment affirmed.

Finlayson, P. J., and Craig, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 14, 1922.

All the Justices present concurred.

Richards, J., *pro tem.*, and Myers, J., *pro tem.*, were acting.